Dionisios Marinos, Esq.
SB#: 198333
mrmarinos@yahoo.com
5150 E. Pacific Coast Hwy.
Suite #200
Long Beach, CA 90804
TEL: (888) 454-0342
FAX: (888) 702-8684

Attorney for Plaintiff,
Julio Mendez

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO MENDEZ, <br><br>         Plaintiff, <br>     vs. <br><br> CITRUS COMMUNITY COLLEGE DISTRICT, BOARD OF TRUSTEES, a public entity, GREG SCHULTZ, Ed.D., in his individual and official capacities, RICHARD F. RAMS, Ed.D., in his official capacities, MARYANN TOLANO-LEVEQUE, Ed.D., in her individual and official capacities, and DOES 1-50; <br><br>         Defendant(s). | Case No.: <br><br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff, Julio Mendez (hereinafter referred to as "Plaintiff"), brings this Complaint against the Citrus Community College District, Board of Trustees, Greg Schultz, Ed.D., Richard F. Rams, Ed.D, and Maryann Tolano-Leveque, Ed.D. (hereinafter collectively referred to as "Defendants"), for damages, injunctive and declaratory relief and attorney fees. Based on personal knowledge and information and belief, Plaintiff alleges the following:

_1

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

## I.    INTRODUCTION

This is a suit for damages arising out of practices of discrimination on the basis of disability and retaliation and violations of Constitutional Rights of Due Process and Equal Protection, protected by the 14th Amendment, against the Citrus Community College District, Board of Trustees (hereinafter referred to as "Citrus College" or "Defendant"), Greg Schultz, Ed.D. (hereinafter individually referred to as "Schultz" or "Defendant"), in his individual and official capacity as Superintendent and President, Richard F. Rams, Ed.D. (hereinafter individually referred to as "Rams" or "Defendant"), in his official capacity as Vice President of Student Services and Maryann Tolano-Leveque (hereinafter referred to as "Tolano" or "Defendant"), in her individual and official capacity as the Dean of Student Affairs. The unlawful practices of discrimination, retaliation and violation of Constitutional Rights were intentionally and with reckless disregard, inflicted on Mr. Julio Mendez (hereinafter referred to as "Mendez" or "Plaintiff") and are in violation of his constitutional and legal rights to be free from such unlawful acts while lawfully attending public school. By subjecting Plaintiff to the wrongful and unlawful acts described below, Defendants have violated Section 504 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131–12134. Furthermore, Defendants retaliated against Plaintiff when he tried to exercise his legal and constitutionally protected rights. Defendants have also violated Plaintiff's fundamental rights of Equal Protection, by applying policies negatively towards Plaintiff due to his age, and Due Process, under the Fourteenth Amendment, by depriving Plaintiff from his property and liberty interests without the proper procedural processes and safeguards. Citrus College's policies and enforcement practices are challenged on their face and as applied.

## II.    JURISDICTION

1.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343, and 42 U.S.C. § 12188(a)(1). All causes of action brought herein are based on federal law or the U.S. Constitution.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

2. This Court has authority pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment to the United States Constitution.

3. This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

4. This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

### III.   VENUE

5. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims in this Complaint occurred within the Central District of California.

### IV.   PARTIES

6. Plaintiff Mendez is a 54-year-old resident of Los Angeles, California, who was a Citrus College student from the Spring Semester of 2023 to the Spring Semester of 2024.

7. The Citrus College Community College District, Board of Trustees, is the local public governing body that operates Citrus College, a public community college in Glendora, California. Citrus College receives federal funds, including Title IV federal student aid.

8. At all times relevant to this Complaint, Defendant Schultz is sued individually and in his official capacity, as Superintendent and President of Citrus College, and was responsible for administration and policymaking, including the policies and procedures that were applied to deprive Plaintiff of his legal and constitutional rights. Defendant Schultz acquiesced in, sanctioned, and supported the actions of all Defendants in enforcing these policies against Plaintiff. Defendant Schultz also individually acted under color of state law when he violated Plaintiff's constitutional rights and denied Plaintiff Equal Protection and Procedural Due Process in violation of the Fourteenth Amendment to the U.S. Constitution.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

9. Defendant Rams was at all times relevant to this Complaint, Vice President of Student Services at Citrus College. Defendant Rams acted under color of state law when he oversaw and enforced the policies and procedures that were applied to deprive Plaintiff of his constitutional rights, and with policymaking duties, acquiesced in, sanctioned, and supported the actions of all Defendants in enforcing these policies against Plaintiff. Defendant Rams is sued in his official capacity.

10. Defendant Tolano was at all times relevant to this Complaint, Dean of Student Affairs at Citrus College. Defendant Tolano acted under color of state law when she oversaw and enacted policies and procedures that were utilized to deprive Plaintiff of his constitutional rights. Furthermore, Tolano acquiesced in, sanctioned, and supported the actions of all Defendants in enforcing these policies against Plaintiff. Defendant Tolano is sued in her individual and official capacities.

11. Defendants identified as DOES 1–50, are employees, independent contractors, officials, or authorized agents of the Defendants, whose identities are presently unknown. Plaintiff is informed and believes, and thereon alleges, that all such DOE defendants (DOES 1-50) have acted wrongfully and have some responsibility for the wrongs and damages as alleged below, during the periods of time relevant to this Complaint, and in so acting wrongfully, were functioning, as employees, independent contractors, officials, or authorized agents, of the Defendants, and in doing the actions mentioned below, were acting with the express or implied permission of any co-defendants and any acts alleged below, were authorized and ratified by any co-defendant or the DOE defendants (DOES 1-50) acted independently, to commit such unlawful acts.

12. After appropriate discovery, the Plaintiff will ask for the court's permission to amend this complaint to allege the true names and capacities of such DOES 1-50, when those names and capacities have been discovered.

//

//

//

4

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

## V.    FACTS COMMON TO ALL CLAIMS

13. Plaintiff, Julio Mendez, was born in Baja California, Mexico, in 1971. He was brought to Los Angeles, California, at the age of four and became lawfully naturalized as a United States citizen in 1995.

14. Approximately 20 years ago, Plaintiff began to be diagnosed with a series of chronic health conditions, including asthma, anxiety, depression, bipolar disorder, arthritis, Type 2 Diabetes, Obesity, Post Traumatic Stress Disorder (PTSD), and other medical diagnoses protected by the Health Insurance Portability and Accountability Act (HIPAA).

15. These conditions constitute physical and mental impairments that substantially limit one or more of Plaintiff's major life activities, rendering him a person with a disability under applicable federal and state laws.

16. From 1991 – 2005, Plaintiff worked as a community organizer in the non-profit sector, connecting resources to the homeless community. He held a state-certification on chemical dependency as a counselor for 20 years.

17. Beginning in 2005, Plaintiff's health issues worsened. He worked less and less over time, while taking community college courses through the Fall of 2014.

18. In 2022, Plaintiff decided to pursue real estate. He obtained his real estate salesperson license from the State of California but needed two additional academic certificates to become a licensed Real Estate Broker and Appraiser.

19. Citrus Community College is in Glendora, an incorporated city within Los Angeles County, California. It is a favorable location for a college campus due to its lower smog levels compared with other community college campuses in and around Los Angeles. This is because it is in an up-valley foothill suburb with less direct exposure to freeway and warehouse emissions.

20. For this reason, Plaintiff chose to apply to Citrus College, as a person with disabilities, particularly suffering from asthma.

21. Plaintiff was rewarded with the Real Estate Education Endowment Scholarship for a Grade Point Average (GPA) of 3.07, as well as approved for Free Application for Federal

5

Student Aid (FAFSA) grants through the U.S. Department of Education. He was approved for enough grant money to cover his full-time schedule of 15 units.

22. Citrus College admitted Plaintiff as a student in the A.S. Real Estate Program for the Spring Semester of 2023, which would satisfy the educational requirements he needed for his appraisal and broker licenses.

23. This case stems from incidents occurring during the Spring Semester of 2023, the Fall Semester of 2023, and the Spring Semester of 2024 while Plaintiff was enrolled as a student at Citrus College.

24. During Plaintiff's orientation process, he applied for the Disabled Students Programs and Services ("DSPS"). DSPS is the program that California community colleges typically use to provide accommodations to students with disabilities, as they are entitled to under the Americans with Disabilities Act (ADA). It aims to serve disabled students by providing accommodations, including extended time on exams, reduced-distraction rooms, breaks, campus navigation assistance, note-taking assistance, interpreters, and priority seating.

25. Despite providing valid documentation supporting Plaintiff's disability status in conjunction with the other necessary documents, as required by the DSPS Program, Citrus College would not honor all of the accommodations he requested.

26. Sometime in September of 2023, after numerous visits to the Disability Department on campus in attempts to resolve the issue of only being granted partial accommodations, office staff became frustrated with Plaintiff, a DSPS director, even telling him at one point, "[i]t's not what you want, it's what *we* want."

27. At another point during the visit, a woman working in the office said, "[j]eez you can't even remember your student email. It's probably [because of] your age. How are you even going to succeed in your classes?"

28. This made Plaintiff feel extremely disrespected and like he wanted to give up. Plaintiff had no choice but to accept the partial accommodations, which included paper exams,

6

online classes, transportation while on campus, and two-and-a-half times the allotted time to complete exams.

29. Citrus College provided no reason for only granting partial accommodations to the Plaintiff, even when Plaintiff presented an additional letter from his psychotherapist.

30. Towards the beginning of the Fall Semester of 2023, Plaintiff became a member of the Extended Opportunity Programs and Services (EOP&S) Program, which provides extra counseling, textbook assistance, priority registration, workshops, and other support services to help under-resourced students, often first-generation students, succeed in their academic programs.

31. Plaintiff was granted some assistance from the EOP&S Program, such as a backpack and other tangible school supplies; however, he was denied various other services and grants, including but not limited to parking permits, gas gift cards, additional EOP&S grants, and the full amount of the bookstore credits, due to being an online-only student eligible for other grants.

32. Plaintiff stressed that he should still be entitled to the remaining grants, especially since his online-only classes were approved as a result of his disability accommodations.

33. Additionally, Plaintiff would still come to campus to visit the library and handle administrative matters.

34. Additionally, Plaintiff believed he was eligible for other EOP&S grants, and after numerous follow-ups to student services trying to obtain information as to why he was being denied, Rams emailed Plaintiff informing him that the funds had to be adjusted, and they were unable to provide him with the financial aid.

35. In that same email, Rams said, "your eligibility for services and support has properly been determined by our EOP&S program."

36. Rams' email seemed suspicious because prior to this email, a $50.00 grant had appeared on his financial aid portal and then disappeared.

37. On September 19, 2023, the immense stress of the above events caused Plaintiff to hyperventilate and have a severe panic and anxiety attack on campus. Plaintiff had to

7

visit the campus nurse, as well as his primary care physician shortly thereafter, who prescribed Plaintiff more medication to reduce his blood sugar, stress, and anxiety.

38. On or around September 27, 2023, Raul Sanchez, referred Plaintiff to his contact at the Rising Scholars Program, Jorge Razo. Raul Sanchez further assured Plaintiff that he would be eligible due to his demographic. The Rising Scholars Program (hereinafter referred to as "Scholars") connects students from underserved communities with on-campus resources, such as grants and access to a food pantry in the student center ("Food Pantry").

39. Jorge Razo connected Plaintiff to Anthony "Tony" Cheng, as the Scholars coordinator that he should be in contact with, even carbon copying Tony on the email chain with Plaintiff.

40. On October 2, 2023, when Plaintiff visited the Food Pantry, Tony denied the Plaintiff's access to the Food Pantry.

41. When Plaintiff asserted that he was in fact eligible, Tony responded with "[y]ou don't belong here, you're too old, you're not a foster kid, your daughters can take care of you!"

42. Tony also accused Plaintiff of "trying to take advantage of the system" given the fact that Plaintiff was "able to afford a house."

43. Tony then sent Plaintiff away from the Food Pantry with no food.

44. Plaintiff was extremely offended by such statements. The fact that a staff member of his school would make such statements left Plaintiff extremely anxious and emotionally hurt.

45. Plaintiff felt extremely hurt and undignified having to leave the Food Pantry with no food and more than that, he was insulted and humiliated simply because he was trying to receive a benefit that he was entitled to.

46. Plaintiff has the necessity to have regular meals and/or snacks throughout the day because of his health condition of diabetes, and the Food Pantry would have been a great resource for Plaintiff, to be able to manage such difficulties.

47. It is Plaintiff's information and belief and thereon alleges that Tony did not like Plaintiff because of Plaintiff's age and thus denied Plaintiff's access to the Food Pantry.

8

48. The following day, on October 3, 2023, Plaintiff reported the interaction with Tony via email to Jorge Razo.

49. On October 5, 2023, Jorge Razo acknowledged receipt of the email and expressed that he was sorry to hear about the concerning incident with Tony.

50. On October 15, 2023, Plaintiff informed Jorge Razo that he would not be filing "a formal grievance" because he understands "no one is perfect and we all make mistakes but I will not allow this matter to go unresolved, and it is difficult for me to communicate with Mr. Cheng now because of the hate he has."

51. Plaintiff requested an apology from Tony. Instead of receiving an apology, Jorge Razo connected Plaintiff with Brenda Fink, the Human Resources Manager, to assist Plaintiff with a discrimination complaint.

52. On or around November 7, 2023, Plaintiff met with FKCE Program Supervisor, Jorge Razo, to further discuss his eligibility for the Scholars program.

53. Plaintiff brought up the subject about Tony denying his access to the Food Pantry back on October 2nd, and Jorge responded with "[i]f you're not going to get along with my staff, there is nothing I can do for you."

54. Plaintiff was extremely upset at the idea that he would be denied services because of a false accusation that he was not getting along with Jorge's staff, presumably, Tony. Plaintiff was hurt and offended by such an accusation.

55. Plaintiff stood up for himself and asserted that he was not combative with Jorge's staff, but rather he was standing up and speaking out for his rights. It seemed that Jorge Razo did not appreciate the fact that Plaintiff was assertive and Mr. Razo refused to assist Plaintiff regarding his complaint. Plaintiff left the meeting feeling extremely disrespected and emotionally triggered.

56. On November 29, 2023, Plaintiff received a letter via email from Rams, accusing Plaintiff of being disruptive and disobedient when meeting with Jorge Razo on November 7, 2023. The letter further accused Plaintiff of violating Citrus College District Board

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Policy (BP) 5500 and that such a warning would remain on Plaintiff's record for a minimum of seven (7) years.

57. Such accusations were completely false. If Plaintiff raised his voice or became upset without realizing it, he was likely emotionally triggered, where the encounter caused him to be anxious due to his disability.

58. On February 1, 2024, Plaintiff filed a formal complaint alleging unlawful discrimination and retaliation.

59. On February 15, 2024, the law firm of Parker Stanbury LLP sent a certified letter to Citrus College following a meeting with Plaintiff discussing the events at Citrus College that had occurred thus far.

60. The letter formally reminded Citrus College that Plaintiff suffers from emotional distress, requires medication for his disabilities, and that he previously had an emergency on campus involving paramedics due to the severe stress he experienced at Citrus College.

61. At this time, Plaintiff suspected that Defendants would further retaliate against him, and the letter further requested assurances that Defendants would commit no retaliatory acts.

62. On February 26, 2024, Brenda Fink, on behalf of Citrus College, responded to the written request with another letter, stating that Citrus College will abide by the relevant discrimination complaint procedures.

63. Shortly before this letter, on or around February 20, 2024, Plaintiff once again visited the campus Food Pantry.

64. In an effort to avoid disrupting a ceremony taking place in close proximity, Plaintiff knocked on the back door. When presenting his student identification to Rosario Garcia, the Student Life Supervisor and Chapter Coordinator of the National Society of Leadership and Success (NSLS), Plaintiff engaged in conversation with her about an unanswered email exchange related to his NSLS membership dues.

65. Rosario Garcia initially denied receiving any emails from Plaintiff, explicitly calling him "a liar," and then seemed to remember the email exchange. Although she assured him, she would respond to his email, she became angry and annoyed with Plaintiff because she

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

did not want to talk about the subject. Ms. Garcia permitted Plaintiff to take food bags but prohibited him from taking toiletries.

66. Plaintiff felt extremely hurt and undignified that he was prohibited from taking toiletries.

67. On February 27, 2024, Parker Stanbury LLP sent a second certified letter to Citrus College, this time addressed to Rams.

68. This second letter outlined the position that Citrus College's formal written accusations, against the Plaintiff constituted retaliation because Plaintiff had reported instances of disability discrimination by Citrus College against him.

69. On February 28, 2024, Tolano emailed a letter on behalf of Citrus College addressed to Plaintiff regarding the Food Pantry visit with Rosario Garcia on February 20, 2024. The letter formally accused Plaintiff of a number of violations, including stealing or attempting to steal, disruptive behavior, dishonesty, and persistent serious misconduct. The letter also summoned him to a disciplinary hearing (hereinafter referred to as the "Hearing") on the matter scheduled for March 13, 2024.

70. On that same day, February 28, 2024, Plaintiff responded via email and denied all allegations made against him, detailing his concerns over the timing of such a formal letter sent a day before his scheduled meeting with Brenda Fink, the Title IX Coordinator at Citrus College.

71. Plaintiff suspects Citrus College sent the February 28, 2024, letter in an attempt to intimidate him to cancel his scheduled appointment with Brenda Fink.

72. On March 12, 2024, Plaintiff emailed Citrus College to raise what he found to be conflict of interest concerns in having a disciplinary Hearing, following Plaintiff having filed his original discrimination complaint and again complaining of the serious emotional distress he has been enduring due to the discriminatory and retaliatory acts committed by Defendants.

73. On March 12, 2024, Parker Stanbury LLP sent Citrus College a third certified letter supporting Plaintiff's denial of the allegations against him and requesting that such violations be dismissed.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

74. On March 13, 2024, the disciplinary Hearing occurred. The Hearing was a very difficult experience for Plaintiff. A primary reason was because Tolano in particular was excessively confrontational while questioning Plaintiff.

75. At a point early in the Hearing, Tolano, for no apparent reason, instructed the security guard to stand close to Plaintiff. The security guard's weapon so close to Plaintiff and in his view, caused Plaintiff to be extremely uncomfortable, and he began to sweat profusely and panic.

76. Throughout the Hearing, Tolano was aggressive in her questioning and remained confrontational, causing Plaintiff to suffer from a high-level anxiety attack due to his disabilities. Tolano, being the Dean of Student Affairs, was aware of Plaintiff's history of mental health problems and the anxiety issues that he faced while he was a student at Citrus College.

77. Plaintiff had no assistance in his defense for the Hearing, because Plaintiff was only provided with 13 days to try to find adequate representation for the hearing and Tolano would not continue the date that the hearing was scheduled to take place.

78. Plaintiff also found the Hearing to be biased, especially noticing that the hearing officer would give Citrus College staff members more time to testify than Plaintiff.

79. Towards the conclusion of the Hearing, Plaintiff orally requested a copy of the transcript for his records, and Tolano responded with "no, you're not getting anything."

80. Plaintiff's high-level of anxiety was worsening at this point, and Plaintiff's PTSD was triggered, causing him to have a serious panic attack. Plaintiff expressed that he needed emergency medical assistance.

81. Campus staff then called 911, reporting Plaintiff's panic and abnormal breathing. Paramedics arrived and treated Plaintiff.

82. Plaintiff drove home that day but made sure to seek additional medical services within the week.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

83. On March 18, 2024, Citrus College emailed another letter to Plaintiff memorializing that the Hearing took place on March 13, 2024, and that accordingly, it was decided that Plaintiff was suspended through the Spring Semester of 2025.

84. On March 24, 2024, Plaintiff filed an Appeal.

85. On April 5, 2024, Schultz sent Plaintiff a letter stating that he reviewed the case and the findings from the Hearing would remain accepted.

86. On April 17, 2024, Marie Naguib reached out to Plaintiff via email, introducing herself as a Third-Party Investigator for the events that occurred in February of 2024.

87. Plaintiff had a brief call with Marie Naguib but was overall traumatized by the events and did not want to further participate in the investigation, especially because Marie Naguib asked to meet Plaintiff on campus and Citrus College officials informed Plaintiff that he would be arrested if he arrived on campus.

88. Shortly thereafter, towards the end of April 2024 and during the middle of the Spring 2024 semester, Plaintiff was suspended from Citrus Community College and locked out of his student services.

89. Up to this current time, Citrus College has been contacting Plaintiff demanding that Plaintiff pay back certain funds that he received as grants during the 2024 Spring semester, due to the fact that he was suspended.

## VI.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

Disability Discrimination in Violation of ADA

Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 et seq.

(Against Citrus Community College District, Board of Trustees)

90. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

91. Citrus Community College District's Board of Trustees is a local public governing body that operates Citrus College, a public community college in California. Therefore, Citrus College is a public entity, falling within the provisions of 42 U.S.C. § 12131 et seq.

92. Plaintiff is a qualified individual with a disability.

93. Plaintiff has documented disabilities, including asthma, anxiety, depression, bipolar disorder, arthritis, Type 2 Diabetes, obesity, and PTSD that substantially limit major life activities.

94. Plaintiff was qualified for and admitted to the Real Estate Program, earned a scholarship, and maintained a 3.07 Grade Point Average.

95. Plaintiff was excluded from participation in or denied the benefits of the services, programs, or activities of Citrus College, or was subjected to discrimination by Citrus College directly and through disparate impact in the manner that Citrus College applied its educational programs and services in relation to individuals with disabilities similarly situated as Plaintiff.

96. Defendants knew or should have known of Plaintiff's disabilities.

97. The college had actual knowledge through DSPS documentation and letters mailed by Plaintiff's attorneys.

98. Plaintiff requested and applied for reasonable accommodations through DSPS.

99. Plaintiff provided documentation from his psychotherapist.

100. Plaintiff was denied full disability accommodations through DSPS despite providing valid documentation.

101. DSPS staff told plaintiff "it's not what you want, it's what we want" when he requested full accommodations. Defendants' denial of the reasonable accommodations that Plaintiff requested was based on arbitrary reasons, not taking into account Plaintiff's disability and what reasonable accommodations Plaintiff would need to perform with satisfactory progress in educational requirements and to participate in educational programs and services.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

102. Plaintiff was denied EOP&S services and grants, including parking permits, gas gift cards, and full bookstore credits, because he was an online-only student, even though his online-only status was itself a disability accommodation.

103. Plaintiff complained to Defendants and various other individuals employed by Citrus College regarding the discrimination that Plaintiff was facing. But rather than Defendants remedying the disability discrimination, Defendants retaliated against Plaintiff and further discriminated by making it more difficult for Plaintiff to receive educational services and participate in educational programs.

104. Furthermore, on February 15, 2024, Plaintiff's attorney provided a certified letter further detailing Plaintiff's disabilities and prior medical emergency on campus due to anxiety caused by Defendants' disability discrimination.

105. Regardless of Defendants' knowledge of Plaintiff's disabilities and mental health condition, Defendants did not allow Plaintiff to have any reasonable accomodations during the Hearing. Plaintiff was subjected to a confrontational Hearing without accommodations for his known disabilities, resulting in a severe panic attack.

106. The Hearing resulted in Plaintiff's suspension without any consideration as to the fact that Plaintiff did not have the proper accommodations to be able to fully participate and present his side of the issues, at the Hearing.

107. At the Hearing and thereafter, Plaintiff requested a Hearing transcript to be able to properly appeal, internally or otherwise, any decision resulting from the Hearing. Tolano denied Plaintiff's request and provided no reason for such denial other than the fact that Tolano did not want to provide such Hearing transcript.

108. Following the result of the Hearing, Plaintiff proceeded with an appeal, and regardless of the fact that Plaintiff did not have the proper accommodations to participate in the Hearing, Tolano's actions of creating a confrontational environment at the Hearing and causing Plaintiff to have a panic attack, superintendent Schultz upheld the findings of the Hearing further ratifying the discriminatory conduct that Plaintiff had suffered.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

109. Plaintiff attempted to reach out to a board member of Citrus College, Dr. Anthony Contreras, explaining what had occurred, but Dr. Contreras responded that the decision at the Hearing and the appeal decided by Schultz were correct and had to be followed. Therefore, Dr. Contreras provided tacit support for the discriminatory behavior that Plaintiff had endured at Citrus College.

110. Plaintiff was ultimately suspended and locked out of student services. Such exclusion, denial, or discrimination was by reason of Plaintiff's disability.

111. The denial of reasonable accommodations, the failure to accommodate during the Hearing, and the adverse treatment that Plaintiff received overall were directly related to Plaintiff's disabilities and Citrus College's failure to reasonably accommodate them.

**SECOND CAUSE OF ACTION**

Disability Discrimination and Retaliation in Violation of

Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794

(Against Citrus Community College District, Board of Trustees)

COUNT I (Disability Discrimination)

112. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 111 as if fully set forth herein.

113. Citrus College receives federal funds, including Title IV federal student aid. Therefore, Citrus College falls under the provisions of 29 U.S.C. § 504 and as amended 29 U.S.C. § 794.

114. Plaintiff is a qualified individual with a disability.

115. Plaintiff has documented chronic health conditions, including asthma, anxiety, depression, bipolar disorder, arthritis, Type 2 Diabetes, obesity, and Post-Traumatic Stress Disorder.

116. Plaintiff's physical and mental health conditions substantially limit major life activities, including breathing, concentrating, interacting with others, and managing stress.

16

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

117. Plaintiff provided valid documentation to the DSPS program supporting his disability status.

118. Plaintiff was qualified to participate in the Real Estate Program, as evidenced by his admission, scholarship award, and 3.07 Grade Point Average.

119. Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination and retaliation by Defendants, in relation to Defendants' educational programs, services, or activities.

120. Plaintiff was denied full disability accommodations despite providing valid documentation as described in the FIRST CAUSE OF ACTION above.

121. Plaintiff was denied EOP&S services based on his online-only status, which was itself a disability accommodation.

122. Plaintiff's disabilities include mental health issues that affect the way that Plaintiff interacts with other individuals and the way that Plaintiff relates to the environment and behaviors of other individuals.

123. Given that Plaintiff's mental health disabilities are not visible, certain employees may have interpreted interactions with Plaintiff as confrontational, when in fact Plaintiff was responding in a manner that was normal based on his mental health disabilities.

124. Defendants, such as Vice President Rams, Dean Tolano and Superintendent Schultz, knew or should have known of Plaintiff's mental health disabilities and that Plaintiff's mental health conditions presented special challenges to Plaintiff when facing certain conflicts with individuals.

125. Vice President Rams did not ameliorate the problem but instead discriminated against Plaintiff by falsely classifying Plaintiff's harmless actions that are caused by his mental health conditions as being aggressive.

126. Following the Food Pantry incident, rather than attempting to ameliorate the issue and resolve the situation between Plaintiff and Citrus College employees, such as Jorge Razo or Tony Cheng, Vice President Rams discriminated against Plaintiff by stating that

17

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff was being aggressive and threatening towards Mr. Razo because Plaintiff was pointing at Mr. Razo while speaking.

127. Rams' bad faith acts against Plaintiff were directly because of Plaintiff's disability, with reckless disregard of Plaintiff's mental health conditions, Rams falsely and inaccurately labeled Plaintiff as aggressive, and Rams issued punishment against Plaintiff, causing Plaintiff to have highly negative marks in his educational records for seven years.

128. The false accusations regarding Plaintiff's behavior were exacerbated by Defendants' unwillingness to accommodate Plaintiff's mental health disabilities. Defendants rather attacked Plaintiff's behavior, disregarding his mental health disabilities, in bad faith and with deliberate indifference causing Plaintiff further anxiety and emotional distress.

129. At a previous date, Plaintiff had suffered from a panic and anxiety attack while on campus due to the fact that he was not able to receive reasonable accommodations and fully participate in the programs and services available to him because of his disability. Defendants were fully made aware of this fact by the February 15, 2024, letter that was provided by Plaintiff's attorneys to Defendants.

130. Defendants and specifically Tolano, pursued a disciplinary hearing against Plaintiff, in bad faith, by falsely claiming that Plaintiff had committed certain unfounded wrongful acts during the Food Pantry visit on February 20, 2024.

131. The Hearing procedure was in bad faith because it was rushed, not allowing Plaintiff sufficient time to find proper representation and to prepare for said Hearing, in a manner that would be accommodating to Plaintiff's known mental health disabilities.

132. Furthermore, without the proper representation, and with added extreme stress and anxiety, Plaintiff would not be able to properly present his side of the issues, and the Hearing officer would more than likely find in favor of suspending Plaintiff.

133. Plaintiff was subjected to a confrontational Hearing where Tolano directed an armed security guard to stand in close proximity, despite knowing of Plaintiff's PTSD and anxiety, causing a severe panic attack requiring paramedic intervention.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

134. Tolano knew that Plaintiff suffered from mental health disabilities, and Tolano's acts at the Hearing were either done intentionally to trigger Plaintiff that way he would not be able to present his issues and would seem confrontational, or with deliberate indifference of Plaintiff's disability. Nonetheless, the Hearing procedures were conducted in a manner that discriminated against Plaintiff because of his disability.

135. Furthermore, Tolano arbitrarily denied the provision of the Hearing transcript to Plaintiff, attempting to cause further anxiety to Plaintiff, believing that Plaintiff would further act out and there would be further reasoning that Tolano could utilize to substantiate her wrongful and deliberate indifferent actions of seeking Plaintiff's suspension.

136. The confrontational manner in which the Hearing proceeded, as well as the arbitrary denial of the Hearing transcript, were in bad faith and done intentionally to cause Plaintiff to be triggered because of his mental health conditions.

137. Plaintiff's suspension was upheld on appeal by Schultz, therefore, Schultz, ratified, authorized and reinforced the discriminatory and retaliatory acts of the other Defendants.

138. Defendants, in bad faith and with deliberate indifference, made no attempt to properly train their staff to be able to communicate with individuals, such as Plaintiff, who suffer from mental health disabilities that may cause such individuals to be falsely perceived as having confrontational behavior.

139. Plaintiff's exclusion from Defendants' educational programs and services, denial of benefits, discrimination, and retaliation were solely by reason of Plaintiff's disability.

140. The denial of reasonable accommodations, the deliberate indifference of interpreting Plaintiff's mental health struggles as aggressive or confrontational behavior, the failure to properly accommodate Plaintiff's mental health disabilities and subsequent intentional and/or reckless disregard regarding Plaintiff's mental health disabilities during and following the Hearing despite actual knowledge of Plaintiff's mental health disabilities, and the overall adverse treatment that Plaintiff received were directly related to Plaintiff's disability status and the Defendants' deliberate indifference to Plaintiff's disability-related needs.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

141. Defendants' wrongful and unlawful behavior caused Plaintiff and continues to cause Plaintiff damages including emotional anxiety and distress.

COUNT II (Retaliation)

142. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 141 as if fully set forth herein.

143. Citrus College receives federal financial assistance, including Title IV federal student aid.

144. Plaintiff engaged in protected activity.

145. On October 3, 2023, Plaintiff reported the discriminatory interaction with Tony Cheng via email to Jorge Razo.

146. Following his complaints, Plaintiff received a disciplinary warning letter from Rams on November 29, 2023.

147. On February 1, 2024, Plaintiff filed a formal complaint alleging unlawful discrimination and retaliation.

148. On February 15, 2024, Plaintiff's attorney sent a certified letter to Citrus College detailing the discrimination and requesting assurances against retaliation.

149. Plaintiff' I s complaints constitute protected activities.

150. Defendant took adverse action against Plaintiff due to Plaintiff's complaints regarding discrimination.

151. In direct response to such protected legal activity by Plaintiff, Defendants retaliated against Plaintiff on February 28, 2024, accusing Plaintiff of aggressive behavior and theft at the Food Pantry on February 20, 2024. This was, in fact, false.

152. These false accusations were for the sole purpose of retaliating against Plaintiff because Plaintiff had attempted to protect himself from discrimination by filing a complaint against Defendants.

153. The retaliation by Defendants was apparent because the disciplinary Hearing letter, on February 28, 2024, was prepared directly after Plaintiff's attorneys had contacted Rams in writing, on February 27, 2024, emphasizing that it is unlawful for Plaintiff to have to face any retaliatory acts because of the complaint he had filed.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

154. Plaintiff received a formal accusation letter on February 28, 2024, one day before his scheduled meeting with Brenda Fink, the Citrus College official handling Plaintiff's disability complaint and shortly after Plaintiff's attorney's letter.

155. Plaintiff was subjected to a confrontational Hearing on March 13, 2024, and was denied the Hearing transcript, for no stated reason.

156. Plaintiff was suspended through Spring Semester 2025.

157. Defendants' retaliatory actions continued following Plaintiff's suspension when they threatened Plaintiff with arrest if he went to Citrus College campus to meet with Marie Naguib, the individual investigating the February 2024, issues.

158. These are materially adverse actions affecting Plaintiff's educational opportunities.

159. There is a causal connection between the protected activities and the adverse actions.

160. The temporal proximity between the protected activities and adverse actions establishes causation.

161. The November 29 warning came after Plaintiff's October 3 complaint.

162. The February 28 accusation letter came one day before Plaintiff's scheduled meeting to discuss his discrimination complaint, and shortly after his attorney's letter requesting assurances against retaliation.

163. Defendants continued to retaliate against Plaintiff even after he was suspended by threatening to arrest him if he went to the Citrus College campus to discuss any of the February 2024 events with the third-party investigator.

164. In addition to the denial of reasonable accommodations and services and discriminatory conduct, by Defendants, Plaintiff was retaliated against for complaining regarding such denials and discriminatory conduct.

165. The adverse actions were sufficiently severe to deter a reasonable person from engaging in protected activity.

166. Plaintiff was threatened with a disciplinary record lasting seven years.

167. Plaintiff was subjected to a traumatic Hearing causing a medical emergency.

168. Plaintiff was suspended for over a year.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

169. Plaintiff was locked out of student services.

170. Plaintiff was threatened with arrest if he came to campus.

171. These actions would deter any reasonable person from reporting discrimination

172. Plaintiff suffers from extreme anxiety and distress which were caused by Defendants' wrongful and unlawful actions.

### THIRD CAUSE OF ACTION

Violation of the Fourteenth Amendment – Equal Protection

42 U.S.C § 1983

(Against all Defendants in their Official Capacities)

173. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 172 as if fully set forth herein.

174. Citrus College is a public entity, and any actions taken by Citrus College officials, within their official capacity, were taken under color of state law.

175. Dr. Greg Schultz served as Superintendent and President of Citrus College, a public community college, with responsibility for administration and policymaking.

176. Richard F. Rams served as Vice President of Student Services, overseeing and enforcing policies affecting students, including, but not limited to, the allocation of funds and the standards for qualifying students for EOP&S benefits.

177. Both acted under color of state law in their official capacities as administrators of a California public educational institution.

178. Plaintiff is an older student who returned to college. Based on the State of California criteria, Plaintiff qualified for EOP&S benefits. Plaintiff was also qualified for benefits based on the Scholars program.

179. Even though Plaintiff was referred to the EOP&S and Scholars program by Citrus College faculty and staff, Plaintiff consistently faced obstacles in receiving those benefits, as fully described above.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

180. Plaintiff was told by Citrus College staff that he was not entitled to EOP&S and Scholars benefits because he was too old or had children old enough to work.

181. Plaintiff faced other unfair treatment based on his age, including being told that he may be too old to be able to complete the educational requirements for his academic program.

182. Plaintiff was deprived of his Fourteenth Amendment right to equal protection through discriminatory denial of services, and unfair treatment based on his age.

183. Plaintiff was treated differently due to his age, from similarly situated individuals who had qualified for the same EOP&S and Scholars benefits, and there was no rational basis for such differential treatment.

184. There was no rational basis for the actions taken by Citrus College and its officials because the State of California has already determined that age is not a criterion for determining a student's qualifications for receiving EOP&S benefits and the Scholars program also has no age criteria.

185. Defendants' conduct deprived Plaintiff of rights secured by the Fourteenth Amendment to the Constitution. Plaintiff has the right to receive a legal remedy for the violation of his Fourteenth Amendment rights through 42 U.S.C. § 1983.

186. The discriminatory treatment was intentional and based on custom and policy, as evidenced by explicit age-based discriminatory statements by various staff.

187. The violations resulted from an official policy, custom, or practice, or from deliberate indifference by officials with final policymaking authority.

188. The violations resulted from official policies and practices enforced by Schultz and Rams, who had final policymaking authority.

189. Schultz, as President and Superintendent, had ultimate authority over college policies and upheld the discriminatory suspension on appeal.

190. Rams, as Vice President of Student Services, directly enforced the policies denying Plaintiff's EOP&S benefits and disciplined Plaintiff when Plaintiff attempted to receive the Scholars benefits at the Food Pantry. Therefore, Rams enforced the policy that Plaintiff was too old to qualify for said benefits.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

191. The pattern of discrimination and the failure to correct known violations despite formal notice demonstrate deliberate indifference by policymakers.

192. The violation of Plaintiff's Fourteenth Amendment Equal Protection Rights, by the Defendants caused Plaintiff to suffer damages.

**FOURTH CAUSE OF ACTION**

Violation of the Fourteenth Amendment – Procedural Due Process

42 U.S.C § 1983

COUNT I

(Against all Defendants in their Official Capacities)

193. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 192 as if fully set forth herein.

194. Defendants, Citrus College, being a public entity, and Schultz and Tolano, being public officials, acted under color of state law to suspend Plaintiff and negatively mark Plaintiff's education record with false accusations of misconduct.

195. Plaintiff had and continues to have a protected property interest in his education and a protected liberty interest in his public record and reputation.

196. Plaintiff was not afforded sufficient time to be able to properly prepare for the Hearing that would determine the outcome regarding Plaintiff's property and liberty interests, including sufficient time to obtain legal representation or assistance despite Plaintiff's known disabilities affecting his ability to advocate for himself.

197. Tolano conducted the Hearing in a biased manner, being excessively confrontational and aggressive.

198. Tolano directed the security guard at the Hearing to stand in close proximity to Plaintiff, despite no basis for danger and Defendants' knowledge of Plaintiff's PTSD, creating an intimidating atmosphere.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

199. Tolano's and the security guard's conduct was so confrontational that it caused Plaintiff to have a severe panic attack requiring paramedic intervention, yet the Hearing proceeded and resulted in a decision against Plaintiff.

200. Plaintiff was denied his request for a Hearing transcript by Tolano, for no reason, other than stating that Tolano was not going to provide it.

201. The above procedural deficiencies denied Plaintiff a fair opportunity to defend himself and effectively present the issues that were of the utmost importance for Plaintiff to prevail at the Hearing.

202. Schultz upheld the decision resulting from the Hearing, even after he was made aware of the constitutional procedural deficiencies discussed herein.

203. Following Schultz's upholding of the Hearing's decision, Plaintiff was again denied the Hearing transcript that was necessary for Plaintiff to proceed with an external administrative appeal.

204. Furthermore, Plaintiff was not allowed to continue with his discrimination complaint because the third-party investigator assigned to Plaintiff's complaint required Plaintiff to be present at the Citrus College campus. Defendants were clear that Plaintiff was not permitted on campus following the findings of the Hearing, and threatened Plaintiff with arrest if he attempted to go to Citrus College. Therefore, preventing Plaintiff from being able to continue with his discrimination complaint.

205. Plaintiff was suspended through Spring Semester 2025 and locked out of student services, depriving him of his educational opportunities.

206. The disciplinary record causes damage to Plaintiff's reputation and future educational and employment prospects.

207. Plaintiff had a property interest in his continued enrollment at Citrus College, which Defendants deprived Plaintiff of without Procedural Due Process.

208. Plaintiff had a liberty interest in his reputation, which was damaged by the accusations of stealing, dishonesty, and misconduct that will remain on Plaintiff's educational record, and Defendants deprived Plaintiff of this right without Procedural Due Process.

25

209. Plaintiff has the right to receive a legal remedy for the violation of his Fourteenth Amendment rights through 42 U.S.C. § 1983.

210. Schultz, being the Superintendent and President of Citrus College, has policymaking authority, evidenced by the fact that he has plenary power to review, decide, and ultimately overturn decisions of third-party hearing officers.

211. Tolano, being the Dean of Student Affairs, has policymaking authority in the way that the student disciplinary hearings are conducted to ensure a fair and non-biased process.

212. Schultz and Tolano created policies and procedures, enforced, or followed the policies, procedures, protocols, and customs established by Citrus College that were unfair and deprived Plaintiff of his property and liberty interests without Procedural Due Process in violation of Plaintiff's Fourteenth Amendment Constitutional Rights.

213. Defendants unconstitutional acts caused Plaintiff damages and continue to cause Plaintiff emotional distress and anxiety.

COUNT II

(Against Greg Schultz, Ed.D. and Maryann Tolano-Leveque, Ed.D. in their individual capacities)

214. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 213 as if fully set forth herein.

215. Defendants, Schultz and Tolano, acted under color of state law.

216. Plaintiff has a Fourteenth Amendment Constitutional right to his property and liberty interests. Plaintiff has the right to receive a legal remedy for a violation of his Fourteenth Amendment rights through 42 U.S.C. § 1983.

217. Tolano, as the Dean of Citrus College, a public entity, was provided with power and authority to determine Hearing procedures and conduct the Hearing that would ultimately affect Plaintiff's property and liberty interests, as described above.

218. Tolano's individual conduct in controlling the unconstitutional procedures regarding the Hearing and her denial of providing Plaintiff with a transcript of the Hearing, deprived Plaintiff of his educational and liberty interests without Procedural Due Process.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

219. Schultz, the Superintendent and President of Citrus College, a public entity, has ultimate power and authority to review Hearing procedures and enforce or overturn any Hearing decisions that did not meet Procedural Due Process.

220. Schultz's affirmation and enforcement of the Hearing decision ratified Tolano's acts. By ratifying Tolano's acts, Schultz authorized the unconstitutional actions that Tolano took in staging and conducting the Hearing, as well as Tolano's denial of providing a Hearing transcript to Plaintiff.

221. Schultz's individual conduct deprived Plaintiff of his property and liberty interests without Procedural Due Process.

222. Defendants' unconstitutional individual conduct deprived Plaintiff of educational opportunities and damaged Plaintiff's reputation, causing Plaintiff damages.

<u>JURY DEMAND</u>

223. Plaintiff is entitled to and demands a trial by jury on all issues so triable.

## VII.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests and prays that this Court enter judgment in his favor and grant the following relief:

<u>FIRST CAUSE OF ACTION</u>

1.    Injunctive relief against Defendants, including reinstatement of Plaintiff as a student at Citrus College, removal of disciplinary records, restoration of student services access, an order requiring the college to provide full disability accommodations, and an order requiring the college to implement policies and training to prevent future discrimination;

2.    Declaratory relief against Defendants declaring that Defendants' policies and practices violate federal disability laws, that Defendants' conduct violated plaintiff's disability rights, and that plaintiff is entitled to full disability accommodations.

3.    Attorney fees against Defendants, pursuant to 42 U.S.C. § 12205;

27

4. Costs of suit;

5. Such other and further relief as the Court deems just and proper.

SECOND CAUSE OF ACTION

COUNT I

1. Compensatory damages against Defendants for special damages, including medical expenses, lost educational opportunities, costs of medication and treatment, and other economic losses according to proof;

2. Compensatory damages of $500,000.00 against Defendants for general damages, including emotional distress, pain and suffering, humiliation, and loss of dignity;

3. Injunctive relief against Defendants, including reinstatement of Plaintiff as a student at Citrus College, removal of disciplinary records, restoration of student services access, an order requiring the college to provide full disability accommodations, and an order requiring the college to implement policies and training to prevent future discrimination;

4. Declaratory relief against Defendants declaring that Defendants' policies and practices violate federal disability laws, that Defendants' conduct violated plaintiff's disability rights, and that plaintiff is entitled to full disability accommodations.

5. Attorney fees against Defendants, pursuant to 29 U.S.C. § 794a;

6. Prejudgment and post-judgment interest on all damages from the date of injury at the applicable rate;

7. Costs of suit;

8. Such other and further relief as the Court deems just and proper.

COUNT II

1. Compensatory damages against Defendants for special damages, including medical expenses, lost educational opportunities, costs of medication and treatment, and other economic losses according to proof;

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

2. Compensatory damages of $500,000.00 against Defendants for general damages, including emotional distress, pain and suffering, humiliation, and loss of dignity;

3. Injunctive relief against Defendants, including reinstatement of Plaintiff as a student at Citrus College, removal of disciplinary records, restoration of student services access, an order requiring the college to provide full disability accommodations, and an order requiring the college to implement policies and training to prevent future discrimination;

4. Declaratory relief against Defendants declaring that Defendants' policies and practices violate federal disability laws, that Defendants' conduct violated plaintiff's disability rights, and that plaintiff is entitled to full disability accommodations.

5. Attorney fees against Defendants, pursuant to 29 U.S.C. § 794a;

6. Prejudgment and post-judgment interest on all damages from the date of injury at the applicable rate;

7. Costs of suit;

8. Such other and further relief as the Court deems just and proper.

THIRD CAUSE OF ACTION

1. Compensatory damages against Defendants for special damages, including medical expenses, lost educational opportunities, costs of medication and treatment, and other economic losses according to proof;

2. Compensatory damages of $500,000.00 against Defendants for general damages, including emotional distress, pain and suffering, humiliation, and loss of dignity;

3. Injunctive relief against Defendants, including reinstatement of Plaintiff as a student at Citrus College, removal of disciplinary records, restoration of student services access and an order requiring the college to implement policies and training to prevent future Fourteenth Amendment Equal Protection violations;

4. Declaratory relief against Defendants declaring that Defendants' policies and practices violate the Fourteenth Amendment Equal Protection Clause, that

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Defendants' conduct violated Plaintiff's Fourteenth Amendment Equal Protection rights and Plaintiff is entitled to damages;

5. Attorney fees against Defendants pursuant to 42 U.S.C. § 1988;

6. Prejudgment and post-judgment interest on all damages from the date of injury at the applicable rate;

7. Costs of suit;

8. Such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### COUNT I

1. Compensatory damages against Defendants for special damages, including medical expenses, lost educational opportunities, costs of medication and treatment, and other economic losses according to proof;

2. Compensatory damages of $500,000.00 against Defendants for general damages, including emotional distress, pain and suffering, humiliation, and loss of dignity;

3. Injunctive relief against Defendants, including reinstatement of Plaintiff as a student at Citrus College, removal of disciplinary records, restoration of student services access, and an order requiring the college to implement policies and training to prevent future violations of Fourteenth Amendment Procedural Due Process;

4. Declaratory relief against Defendants declaring that Defendants' policies and practices violate Fourteenth Amendment Procedural Due Process, that Defendants' conduct violated Plaintiff's Fourteenth Amendment Procedural Due Process rights, and that Plaintiff is entitled to damages;

5. Attorney fees against Defendants pursuant to 42 U.S.C. § 1988;

6. Prejudgment and post-judgment interest on all damages from the date of injury at the applicable rate;

7. Costs of suit;

8. Such other and further relief as the Court deems just and proper.

30

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

COUNT II

1. Compensatory damages against Defendants for special damages, including medical expenses, lost educational opportunities, costs of medication and treatment, and other economic losses according to proof;

2. Compensatory damages of $500,000.00 against Defendants for general damages, including emotional distress, pain and suffering, humiliation, and loss of dignity;

3. Punitive damages of $500,000.00 to punish Defendants for their callous and deliberate indifference to Plaintiff's Fourteenth Amendment Constitutional rights;

4. Declaratory relief against Defendants declaring that Defendants' individual conduct was under color of state law and violated Plaintiff's Fourteenth Amendment Procedural Due Process rights, and that Plaintiff is entitled to damages;

5. Attorney fees against Defendants pursuant to 42 U.S.C. § 1988;

6. Prejudgment and post-judgment interest on all damages from the date of injury at the applicable rate;

7. Costs of suit;

8. Such other and further relief as the Court deems just and proper.

Date:   4/3/2026  .

By:/s/ *Dionisios Marinos*

    Dionisios Marinos
    Attorney for Plaintiff
    Julio Mendez

COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF